IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANDREW P. Y.,

                           Plaintiff,                    Civil Action No.
                                                  3:19-CV-0475 (DEP)

          v.

ANDREW M. SAUL, Commissioner of Social
Security,[1]

                           Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY OF MID-NEW     ELIZABETH V. KRUPAR, ESQ.
YORK, INC.
Syracuse Office
221 South Warren Street, Suite 310
Syracuse, NY 13202

---

[1]     Plaintiff's complaint named Nancy A. Berryhill, in her capacity as the Acting Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

<u>FOR DEFENDANT</u>

HON. GRANT C. JAQUITH                    DANIEL TARABELLI, ESQ.
United States Attorney                         Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are cross-motions for judgment on the pleadings.[2]  Oral

argument was heard in connection with those motions on May 28, 2020,

during a telephone conference conducted on the record. At the close of

argument I issued a bench decision in which, after applying the requisite

deferential review standard, I found that the Commissioner's determination

resulted from the application of proper legal principles and is supported by

substantial evidence, providing further detail regarding my reasoning and

---

[2]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:    June 1, 2020
          Syracuse, NY

3

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
ANDREW PHILIP Y.,

                            Plaintiff,

vs.                        3:19-CV-475

ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY,


                            Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on May 28, 2020, the HONORABLE

DAVID E. PEEBLES, United States Magistrate Judge,

Presiding.

               A P P E A R A N C E S

                (By Telephone)

For Plaintiff:     LEGAL AID SOCIETY OF MID-NEW YORK
                 221 South Warren St., Suite 310
                 Syracuse, New York  13202
                   BY:  ELIZABETH V. KRUPER, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                 Office of the General Counsel
                 JFK Federal Building, Room 625
                 15 New Sudbury Street
                 Boston, Massachusetts 02203
                   BY:  DANIEL TARABELLI, ESQ.

            *Jodi L. Hibbard, RPR, CSR, CRR*
         *Official United States Court Reporter*
              *100 South Clinton Street*
          *Syracuse, New York  13261-7367*
              *(315) 234-8547*

1           (The Court and counsel present by telephone.)

2           THE COURT:  I'd like to thank counsel for excellent

3    presentations, both written and verbal.  I've enjoyed working

4    with you, this was an interesting case.

5           Plaintiff has commenced this proceeding pursuant to

6    42 United States Code Sections 405(g) and 1383(c)(3) to

7    challenge a determination by the Commissioner of Social

8    Security finding that plaintiff was not disabled at the

9    relevant times and therefore ineligible for the benefits

10   which he sought.

11          The background is as follows:  Plaintiff was born

12   in August of 1976, he is currently 43 years old.  He was 34

13   years of age at the time of the alleged onset of disability

14   in July 2010, and 40 at the time of the hearing in this

15   matter which was conducted in February 2017.  Plaintiff at

16   various times has lived in Bainbridge and more recently at

17   the time of the hearing in Norwich, New York.  He lives alone

18   although he has a girlfriend.  Plaintiff has no children.

19   Plaintiff is 5 foot 10 inches in height and, at least

20   according to page 282 of the administrative transcript,

21   weighs 250 pounds.  Plaintiff is right-handed.  He has a GED

22   and while in school attended regular classes.  Plaintiff did

23   have a driver's license but it was suspended.

24          In terms of work, plaintiff last worked on July 1,

25   2010.  He worked as a laborer from 1997 to 1999.  From 2003

1    to 2004, he worked as a mechanical tech person/technological

2    person at a recycling -- two different recycling facilities.

3    There is indication he was laid off from those positions.

4    From 2005 to 2007 he worked as a park ranger at Fire Island

5    and was laid off possibly as result of a seasonal issue from

6    that position.  From 2007 to 2008, plaintiff was a seasonal

7    delivery person for UPS.  He also worked in 2010 as a gas

8    station deli person for four to five months.  That job ended

9    due to excessive absenteeism.

10          The plaintiff physically has a back issue that

11   stems possibly from an incident when he fell off the back of

12   a UPS truck.  The record is unclear but it appears that it

13   occurred possibly in early 2008 and resulted in a Workers'

14   Compensation claim.  He suffers from degenerative disk

15   disease and degenerative joint disease in his thoracic and

16   lumbar region and from pain that radiates down into his legs

17   to his feet.  Plaintiff's primary physician is Dr. Michael

18   Freeman.  He also sees neurosurgeon Dr. Saeed Bajwa.  In 2011

19   surgery was discussed and it looks like it was planned or

20   contemplated, as appears from 791 to 793 of the

21   administrative transcript, but apparently was never carried

22   through.  Plaintiff was also referred fairly recently in 2017

23   to Dr. Javaid Malik for pain relief.  Plaintiff testified,

24   however, that Dr. Malik would not prescribe opiates that he

25   requested.  That's at page 57 of the administrative

1    transcript.  Plaintiff was hospitalized in October of 2011

2    with diskitis and vertebral body osteomyelitis, an infection,

3    that appears at 860 to 866, but that appears to have cleared.

4    He was also hospitalized and underwent surgery in July 2014

5    when a dorsal column stimulator was surgically implanted

6    after an earlier trial run.  The results reported that

7    surgery at 816 to 819 of the administrative transcript.

8         The plaintiff has undergone over time significant

9    MRI and CT scans and x-rays.  In December of 2011, he

10   underwent thoracic x-rays which reflected extensive disk

11   space narrowing as well as endplate destruction at the T11-L1

12   level, likely related to the prior diskitis.  Otherwise no

13   significant abnormalities were seen within the thoracic and

14   lumbar spine.

15        On January 29, 2013, CT scan testing reflected,

16   among other things, a small central disk protrusion extending

17   posteriorly by about 3 millimeters at the L4-L5 level but

18   with no central canal stenosis, no foraminal stenosis, and

19   the impression given was there is an old compression fracture

20   involving the T12 vertebral body, there has been interval

21   osseous fusion from a post-traumatic basis between T12 and

22   L1, no central canal stenosis or foraminal stenosis.

23        CT scan conducted later on April 16, 2014 reflected

24   again an auto fusion that occurred at the T11-L1 level.  The

25   impression listed was no significant change in two months.

1   L -- T12-L1 auto fusion after prior diskitis/osteomyelitis

2   but no evidence of neural compression.

3           Dr. Saeed was seen and magnetic resonance imaging

4   or MRI testing was conducted on April 4, 2014 of the lumbar

5   spine reflecting broad diffuse disk bulge at the L4-L5 level

6   as well as central disk herniation and annular tear which is

7   similar in appearance to a prior study but no definitive

8   nerve root compression seen.

9           That followed an earlier MRI that was conducted on

10  April 11, 2013, which revealed continued progression of

11  diskitis, osteomyelitis at T12-L1 level, with near complete

12  loss of disk height at that level but there has been interval

13  resolution of the previously visualized endplate edema, mild

14  worsening in the wedge deformity involving T12 vertebral

15  body.

16          Magnetic resonance imaging testing was again

17  conducted in June of 2014, also reflecting the L4-L5 small

18  broad-based central disk protrusion and annular fissure, but

19  without significant central or foraminal narrowing and also

20  no significant change in appearance of T12-L1 level or

21  findings to suggest residual infectious inflammatory process.

22          On September 13, 2015, MRI testing was again

23  conducted revealing the disk bulge with a small central disk

24  protrusion and annular fissure at L4-L5 and a minimal bulge

25  at L5-S1.  The impression listed on that was there is mild

1   degenerative disease within the lumbar spine without high

2   grade central or foraminal narrowing.  No significant change

3   from the prior study.

4           Plaintiff also appears to suffer from diabetes,

5   hypertension, and hyperlipidemia, although those do not

6   appear from the medical records to impose any limitations on

7   his ability to perform work-related functions.

8           Mentally, plaintiff suffers from an adjustment

9   disorder with anxiety but has not undergone any treatment or

10   medication to address that condition.

11           In terms of medications, plaintiff has been

12   prescribed oxycodone, Oxycontin, Lorazepam, Ativan, he takes

13   Advil, he has a Proventil inhaler and has been prescribed

14   lisinopril.

15           In terms of activities of daily living, plaintiff

16   cooks, does laundry, shops, he can shower and dress, he

17   watches television, listens to the radio, reads, he does not

18   do any cleaning, apparently his girlfriend helps do that and

19   other chores.  He testified that he goes out of his home one

20   to two times per week.  Plaintiff has a history of

21   incarceration for contempt as result of violation of an order

22   of protection and harassment.

23           The evidence suggests that plaintiff has a

24   substance abuse condition or has had in the past.  The --

25   there is evidence of drug-seeking behavior at 575.  In July

1   of 2011 needle marks over veins were observed.  In December

2   of 2014, EMS workers reported that -- to medical officials

3   that plaintiff was a known drug user, that's at 1222 of the

4   administrative transcript.  Plaintiff has denied any heroin

5   use during his testimony at page 63 of the administrative

6   transcript.  Plaintiff smokes one pack per day and has since

7   he was 16 years old.

8          Procedurally, plaintiff applied for Title II and

9   Title XVI benefits under the Social Security Act on August 4,

10   2014 alleging an onset date of July 1, 2010.  He claimed --

11   claims inability to work based on back issues, herniated

12   disks in the back, bulging disks in spine, joint hypertrophy,

13   neurostimulator in spine, neuropathy, degenerative disk

14   disease, fusion of spine, and ostemoritis, that's at page

15   282.  At pages 296 to 299 he claims inability to work based

16   on problems in lifting, standing, walking, sitting, climbing

17   stairs, kneeling, and squatting.

18          A hearing was conducted on February 23, 2017 by

19   Administrative Law Judge Gretchen Mary Greisler to address

20   plaintiff's claims.  A supplemental hearing was conducted on

21   December 6, 2017.  On February 5, 2018, Administrative Law

22   Judge Greisler issued a decision finding that plaintiff was

23   not disabled at the relevant times and therefore ineligible

24   for the benefits sought.  That decision became a final

25   determination of the agency on March 8, 2019 when the Social

1    Security Administration Appeals Council denied plaintiff's

2    request for review.  This action was commenced on April 23,

3    2019, and is timely.

4         In her decision, Administrative Law Judge Greisler

5    applied the five-step familiar sequential test for

6    determining disability.  She first found that plaintiff was

7    last insured on June 30, 2013.

8         At step one, she found that plaintiff was not

9    engaged in substantial gainful activity and has not been

10   since July 1, 2010.

11        At step two, the administrative law judge concluded

12   that plaintiff does suffer from severe impairments that

13   impose more than minimal limitations on the ability to

14   perform work-related functions, including degenerative disk

15   disease and degenerative joint disease in the thoracic spine

16   and lumbar spine.

17        At step three, she concluded that plaintiff's

18   conditions did not meet or medically equal any of the listed

19   presumptively disabling impairments set forth in the

20   Commissioner's Regulations, specifically considering Listing

21   1.04.

22        Based on a survey of the medical evidence and the

23   entire record, ALJ Greisler next concluded that plaintiff

24   retains the residual functional capacity or RFC to perform

25   sedentary work with certain exceptions as follows:  The

1    claimant can sit for up to two hours at a time before needing

2    to change position for at least 10 minutes but retaining the

3    the ability to remain on task.  The claimant can stand or

4    walk for up to one hour at a time before needing to change

5    position for at least 10 minutes but retaining the ability to

6    remain on task.  The claimant can stand up for two hours per

7    day and walk for up to two hours per day.  He can

8    occasionally reach overhead and use foot controls.  The

9    claimant can occasionally climb ladders -- I'm sorry, stairs

10   and ramps, balance, stoop, kneel, crouch, and crawl but can

11   never climb ladders, ropes, or scaffolds.  The claimant

12   cannot work at unprotected heights or tolerate concentrated

13   exposure to vibration, humidity, and wetness or extreme cold.

14          Applying that RFC, the administrative law judge

15   next concluded that plaintiff is incapable of performing his

16   past relevant work as a part worker/mechanic at a recycling

17   company.  It was a position that is typically as generally

18   performed medium and with an SVP of 2, although the

19   vocational expert concluded that it was performed at a heavy

20   exertional limit with an SVP of 3.

21          The administrative law judge next concluded that if

22   plaintiff was capable of performing a full range of sedentary

23   work, the Medical-Vocational Guidelines and specifically Grid

24   Rule 201.27 would direct a finding of no disability.

25          She concluded based on the testimony of a

1    vocational expert and interrogatory responses that plaintiff

2    is capable of performing the functions of a charge account

3    clerk, a call-out operator, and a stuffer as representative

4    occupations and therefore was not disabled at the relevant

5    times.

6           As you know, the court's standard of review is

7    exceptionally deferential.  I must determine whether correct

8    legal principles were applied and whether the resulting

9    determination is supported by substantial evidence.

10   Substantial evidence has been defined as such relevant

11   evidence as a reasonable mind might accept as adequate to

12   support a conclusion.  The standard, as the Second Circuit

13   noted in *Brault v. Social Security Administration*, 683 F.3d

14   443, a 2012 decision, is a rigorous standard.  Substantial

15   evidence standard is deferential, and is even more stringent

16   than the clearly erroneous standard.  The Second Circuit also

17   noted in *Brault* that substantial evidence standard means that

18   once an ALJ finds a fact, that fact can be rejected only if a

19   reasonable fact finder would have to conclude otherwise.

20          The plaintiff in this case has raised three basic

21   contentions.  The first concerns the weight of evidence given

22   to various medical opinions, and wrapped within that,

23   subsumed within that contention is the treating source

24   argument, the argument that the opinions of Dr. Michael

25   Freeman were not properly accorded controlling weight and

1    that the *Burgess* factors, the familiar *Burgess* factors were

2    not considered.  The -- there's also challenge to the

3    opinions of Dr. Fuchs and Dr. Leong.

4          The second is what was once known as the

5    credibility analysis.  Plaintiff challenges the

6    administrative law judge's consideration of plaintiff's

7    subjective complaints of pain.

8          And the third is a step five challenge arguing that

9    the -- there is an insufficient showing of the number of jobs

10   available that plaintiff is capable of performing to meet the

11   significant number test.

12         As a backdrop, I note that it is plaintiff's burden

13   through step four and including the residual functional

14   capacity step to establish not only his conditions but the

15   limitations associated with those conditions.  There are

16   several medical opinions that have been issued in this case.

17   Dr. Michael Freeman, a treating source, on February 17, 2017

18   issued a very restrictive opinion stating that plaintiff is

19   unable to sit more than 15 to 30 minutes, cannot stand or

20   walk more than 15 to 30 minutes at a time without breaks.

21   Also Dr. Freeman indicated that plaintiff would be off task

22   more than 50 percent of the time and would be absent three or

23   more times per month.  His opinion is at 19F.

24         Dr. Gilbert Jenouri examined the plaintiff on

25   November 19, 2014.  He made certain observations at 1139.  He

1    found that the straight leg test right 20 degrees was

2    positive and left 20 degrees positive, both confirmed seated.

3    He addressed the plaintiff's range of motion and concluded in

4    his medical source statement at page 1140 that plaintiff has

5    moderate restriction to walking, standing, sitting long

6    periods, bending, stair climbing, lifting, and carrying.

7            The -- Dr. S. Putcha on December 8, 2014, based on

8    review of the record that was available at that point in

9    time, concluded that plaintiff retained the residual

10   functional capacity for entry level light work, that's at

11   page 118.

12           Dr. Gauthier issued an opinion on February 12, 2015

13   at page 119 and 120 and in his opinion he noted that the

14   evidence supports two brief episodes of very disabling pain,

15   neither of which lasted anywhere close to 12 months.  It then

16   shows ongoing poorly credible reports of severe pain in the

17   context of documented drug use and drug-seeking behavior,

18   indicated that there has been no sustained period of 12

19   months when the claimant hasn't been described as comfortably

20   walking without assist, RFC has never been less than for

21   carrying 20 pounds occasionally, 10 pounds frequently, sit

22   six for any sustained length of time.

23           It was noted in an emergency room report on

24   February 12, 2014 by Dr. Daniel Dickinson who saw the

25   plaintiff for chronic low back pain that plaintiff should

1    avoid bending, heavy lifting, prolonged sitting, and

2    activities which make the problem worse.  He was advised,

3    however, to continue normal activity as much as possible.

4    That's at pages 699 and 700 of the administrative transcript.

5            Dr. Dorothy Leong reviewed the available medical

6    evidence at the time and issued an opinion on March 10, 2017.

7    At page 1350 she concluded the following:  Based upon the

8    review of medical records, this individual should be able to

9    lift 20 pounds occasionally, 10 pounds frequently, sit,

10   stand, and walk six hours in an eight-hour workday with

11   normal work breaks.  There are no limitations in regards to

12   use of the hands or feet.  In regards to postural

13   limitations, ramps and stairs are occasionally, no ladders

14   for scaffolds -- I think that's probably a typo, should be or

15   scaffolds, balancing and stooping are continuously.

16   Kneeling, crouching, and crawling are occasionally, there are

17   no visual or communicative limitations.  In regards to

18   environmental limitations, no unprotected heights, otherwise

19   there are no environmental limitations.

20           And lastly, Dr. Louis Fuchs on June 19, 2017 issued

21   an opinion with a function-by-function check-the-box form,

22   found that plaintiff is capable of performing, including

23   lifting and carrying up to 10 pounds continuously and up to

24   20 pounds frequently.  Can sit eight hours in an eight-hour

25   workday and stand and walk two hours in an eight-hour

1    workday.  He also found that there would be occasional

2    reaching overhead but otherwise use of the hands was, that

3    could be continuous.  That opinion appears at page --

4    Exhibit 26F, I'm sorry.

5              So the administrative law judge first reviewed the

6    decision -- the opinions of Dr. Freeman.  As a treating

7    source normally Dr. Freeman's opinions would be entitled to

8    controlling weight provided that his opinions were not

9    inconsistent with other substantial evidence.  When

10   controlling weight is not accorded to a treating source's

11   opinion, the administrative law judge must apply several

12   factors that have often been referred to as the *Burgess*

13   factors, including the length of the treatment relationship

14   and frequency of examination, nature and extent of the

15   treatment relationship, the evidence supporting the treating

16   provider's opinion, the degree of consistency between the

17   opinion and the record as a whole, whether the opinion was

18   given by a specialist, and other evidence brought to the

19   attention of the administrative law judge.  20 C.F.R.

20   Sections 404.1527 and 20 C.F.R. Section 416.927.  When a

21   treating physician's opinions are repudiated, the

22   administrative law judge must provide reasons for the

23   rejection and those reasons obviously must have substantial

24   evidence backing.  In this case the administrative law judge

25   accorded partial weight to the opinions of Dr. Freeman.

1   Those -- the opinions were discussed at pages 23 and 24 of

2   the administrative transcript.  Admittedly, the *Burgess*

3   factors are not recited rotely in the administrative law

4   judge's decision; however, the decision referred to him as

5   the treating source, reviewed to him as a DO, there was an

6   explanation for the partial rejection and, as the

7   Commissioner has argued, the Second Circuit has noted in

8   several cases, most recently *Guerra v. Saul*, 778 F. App'x 75

9   from October of 2019, the court has overlooked the failure to

10  explicitly consider and rotely list the *Burgess* factors if a

11  searching review of the record assures that the substance of

12  the treating physician rule is not traversed.

13        In this case, I find that the administrative law

14  judge did provide good reasons for the rejection of the

15  treating source's opinions.  I do acknowledge that the --

16  there is some evidence in the record supporting plaintiff's

17  claims but that is not sufficient to negate the finding of

18  substantial evidence supporting the administrative law

19  judge's determination.  In this case I'm not convinced that a

20  reasonable fact finder would have to accept Dr. Freeman's

21  opinions, and I think that once again, the administrative law

22  judge did provide good reasons and those reasons are

23  consistent with the record when considered as a whole.

24        The administrative law judge properly gave weight

25  to Dr. Jenouri's opinions.  Dr. Jenouri was an examining

1   physician, and his opinions were accorded great weight and

2   certainly provide substantial evidence to the residual

3   functional capacity finding.

4            Great weight was also given to Dr. Putcha and

5   Dr. Gauthier and although they were not examining physicians,

6   they are agency physicians with expertise and knowledge of

7   Social Security law and their opinions also can provide

8   substantial evidence.

9            Dr. Fuchs' opinions were given great weight at

10  page 25 and considered, and as well as some weight which was

11  provided to Dr. Leong's opinions at 25, 26.

12           The administrative law judge also considered the

13  statement of Dr. Dickinson that was referred to earlier.  All

14  of these can provide and in fact do provide substantial

15  evidence in this case to support the residual functional

16  capacity.  The weight given to each of these opinions was

17  adequately explained by the administrative law judge.  I find

18  no basis to conclude that a reasonable person would have to

19  reject those opinions.

20           The -- I do note that there is substantial

21  reliance on what occurred in October of 2011.  I think that's

22  misplaced.  It appears that plaintiff was hospitalized with

23  an infection, surgery was planned but never carried out.  By

24  the end of the year, as reflected in two notes, one from

25  November 27, 2011 at 566, and one from December 22, 2011 at

795, that plaintiff appeared to be fairly normal.  He did
have some sort of automatic fusion as result of this at the
T12-L1 level but it does not seem to have significantly
provided residual pain of a debilitating nature.

Dr. Leong's opinion was challenged because of
subsequent medical evidence that was not considered by her,
but I find that the subsequent evidence was generally
consistent with earlier records that she did review and
therefore this does not provide a basis to reject her
opinions.  Also I find that her failure to appear at a
hearing is no basis to reject her opinions, but even if her
opinions are rejected, that would be a harmless error because
of the existence of the many other opinions that do provide
substantial evidence.

Turning to analysis by the administrative law
judge of plaintiff's subjective complaints, that is of course
governed by Social Security Ruling 16-3p.  It requires the
administrative law judge to review the entire record.  The
administrative law judge explained her opinion.  She first
recited plaintiff's claims at page 21 and then proceeded to
analyze those claims at pages 21 through 27 of her opinion.
She relies to a large degree on plaintiff's evidence of drug
seeking and opiate abuse behavior.  These are proper
considerations and can explain why a plaintiff might tend to
exaggerate his claims of pain in order to obtain and support

his opiate abuse.  Plaintiff also relies -- I'm sorry, the administrative law judge also relied on modest MRI results and treatment notes showing normal gait, modest, if any, limitation in range of motion, and once again, although there's existence of evidence that supports plaintiff's contentions concerning pain, doesn't necessarily negate plaintiff's -- the administrative law judge's finding of plaintiff's claims being exaggerated.

The court of course is not positioned to reweigh the evidence, it must only determine if the evidence was properly weighed and whether substantial evidence supports the credibility finding and whether no reasonable fact finder could rule as the administrative law judge did on the issue of credibility.  I -- and I cannot find that to be the case.  I do find substantial evidence supporting the analysis of plaintiff's subjective claims.

Last issue raised by the plaintiff concerns the step five determination where of course the burden rests with the Commissioner.  To satisfy that burden, the Commissioner may rely on the testimony or opinions of a vocational expert.  The obligation of the Commissioner is to prove the existence of a significant number of jobs in the national economy that plaintiff is capable of performing.  20 C.F.R. Section 404.1566.  Unfortunately, the regulations do not define what is a significant number.  There is case law

1   suggesting that 4,000 to 5,000 would not be significant, a

2   significant number of jobs.  There is also case law that over

3   9,000 would suffice to establish the existence of a

4   significant number of jobs.  *Kelly D. v. Saul*, unreported but

5   at 2019 WL 6683542 from December 6, 2019 is a decision from

6   one of my colleagues, Judge Stewart, who surveyed some of the

7   case law on the issue and noted that over 9,000 has been held

8   by other courts to be significant.

9             The issue is also addressed by one of my

10  colleagues, Magistrate Judge Carter in *Hanson v. Commissioner*

11  *of Social Security*, 2016 WL 3960486 from June of 2016, and

12  once again, Judge Carter noted that numbers varying from

13  9,000 upwards have been considered significant and numbers

14  around 4,000 to 5,000 have been -- not been considered to be

15  significant.

16            In this case, it is very clear to me that the

17  administrative law judge made a mathematical error.  When you

18  add up the number of jobs available in the three categories

19  cited, as per the interrogatory responses of the vocational

20  expert, the number is 11,854.  The administrative law judge

21  made a 3,000-job error and concluded that 8,854 was the

22  correct number.  I agree with the Commissioner that if we

23  were to say that the correct number is 8,854 and analyze that

24  and conclude that that is not a significant number, it would

25  be meaningless to remand the matter because the

1    administrative law judge clearly would rely on the vocational

2    expert's testimony and conclude that there were 11,854 jobs,

3    and that is of course a sufficient number to establish a

4    significant number.  But even if we accept 8,854, that is

5    close enough to 9,000 that I conclude that that would

6    constitute a significant number and therefore in any event

7    the step five determination is sufficient, supported by

8    substantial evidence and the Commissioner has properly

9    carried his burden at step five.

10                  So in conclusion, I find that correct legal

11   principles were applied in this case, and that substantial

12   evidence supports the resulting determination.  I will

13   therefore grant judgment on the pleadings to the defendant

14   and order dismissal of plaintiff's complaint.

15                  Once again, thank you both for excellent

16   presentations, I hope everyone stays safe and stays sane.

17             MS. KRUPER:  Thank you, your Honor.  Stay safe,

18   everyone.

19             MR. TARABELLI:  Thank you, your Honor.

20                  (Proceedings Adjourned, 11:50 a.m.)

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5   Official Realtime Court Reporter, in and for the

6   United States District Court for the Northern

7   District of New York, DO HEREBY CERTIFY that

8   pursuant to Section 753, Title 28, United States

9   Code, that the foregoing is a true and correct

10  transcript of the stenographically reported

11  proceedings held in the above-entitled matter and

12  that the transcript page format is in conformance

13  with the regulations of the Judicial Conference of

14  the United States.

15

16                      Dated this 29th day of May, 2020.

17

18

19                      /S/ JODI L. HIBBARD
                        _____

20                      JODI L. HIBBARD, RPR, CRR, CSR
                        Official U.S. Court Reporter

21

22

23

24

25

                    JODI L. HIBBARD, RPR, CRR, CSR
                          (315) 234-8547